IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

\* \* \* \* \* \* \* \* \*

| | |
|---|---|
| In re: JASON DEREK TROFF, )<br><br>Debtor. )<br><br>\* \* \* \* \* \* )<br><br>STATE OF UTAH, CAMILLE )<br>ANTHONY, in her official capacity as )<br>Executive Director of the Utah )<br>Department of Administrative )<br>Services, and GWEN ANDERSON, in )<br>her official capacity as Director of the )<br>Office of State Debt Collection, )<br><br>Appellants, )<br><br>vs. )<br><br>JASON DEREK TROFF, )<br><br>Appellee. ) | District Case No. 2:05-CV-382 BSJ<br>Bankruptcy Case No. 03-21840<br>Adversary Proceeding No. 04-02491<br><br>**MEMORANDUM OPINION &<br>ORDER** |

```
┌─────────────────────────────────┐
│            FILED                │
│  CLERK, U.S. DISTRICT COURT     │
│   August 15, 2005 (3:56pm)      │
└─────────────────────────────────┘
```

\* \* \* \* \* \* \* \* \*

This matter comes before the court on the State of Utah's appeal from the

bankruptcy court Order Granting Debtor's Motion for Partial Summary Judgment and

Denying Defendants' Motion for Summary Judgment, entered on March 8, 2005 (dkt. no.

34) in *Troff v. State of Utah (In re Jason Derek Troff)*, Bankruptcy Case No. 03-21840/

Adv. Proc. No. 04-02491 (Bankr. D. Utah).  The defendants in the adversary proceeding

filed a notice of appeal from that order on March 17, 2005, and elected to proceed on

appeal before the district court pursuant to Fed. R. Bankr. P. 8001(e). (*See* Notice of Appeal, filed March 17, 2005 (dkt. no. 38); Notice of Appellants' Election to Have Bankruptcy Appeal Heard in the United States District Court, filed March 17, 2005 (dkt. no. 39) (*Troff v. State of Utah (In re Jason Derek Troff)*, Bankruptcy Case No. 03-21840/ Adv. Proc. No. 04-02491).) The appeal was docketed by this court on April 26, 2005, and the matter was fully briefed by the parties. Argument on the appeal was heard on June 6, 2005. Kevin V. Olsen appeared on behalf of the State Appellant/Plaintiffs; Michael F. Thompson appeared for and in behalf of the Appellee/Defendant Jason Derek Troff.

## FACTUAL AND PROCEDURAL HISTORY

In August 1997, Jason Derek Troff ("Troff") was convicted of arson in the Third Judicial District Court, State of Utah. That court sentenced Troff to a term of one to fifteen years of imprisonment, which was suspended, and imposed a term of 36 months' probation under state supervision. As part of his sentence, Troff was ordered by the Third District Court to pay restitution in the amount of $239,969.00. Following proceedings on alleged probation violations, Troff's state-supervised probation was reinstated for 36 months on October 30, 2000, expressly conditioned upon, among other things, his payment of restitution "at a rate to be determined by Adult Probation and Parole." Troff's restitution payments were made to the Third District Court, which then forwarded the funds to the designated victim of Troff's offense of conviction.

Approximately one year later, Troff's term of probation was terminated upon the recommendation of the Utah Division of Adult Probation and Parole, and pursuant to that recommendation, the Third District Court converted the restitution order into a civil judgment and transferred the responsibility for collecting the restitution portion of the criminal sentence to the Office of State Debt Collection ("OSDC").  While on probation, Troff had paid $7,949 on his restitution obligation, leaving a balance owing in October 2001 of $232,020.

Troff continued to make restitution payments to the Third District Court of $100-$200 per month until March of 2003.  Troff filed a Chapter 7 bankruptcy petition on February 4, 2003, and was granted a discharge on May 15, 2003.  Subsequently, the OSDC continued in its efforts to collect restitution.  Troff stopped making payments and notified the State through his attorney that the restitution obligation had been discharged.

On February 18, 2004, Troff reopened his bankruptcy case and commenced an adversary proceeding against the State of Utah asking the bankruptcy court to: (1) determine that his restitution order had been discharged, and (2) find the State in contempt for trying to collect on the restitution obligation after the "debt" had been discharged.

The State filed a motion for summary judgment and argued that criminal restitution orders are not dischargeable under 11 U.S.C. § 523(a)(7) as construed by the United States Supreme Court in *Kelly v. Robinson*, 479 U.S. 36 (1986).  Troff filed a cross-

motion for partial summary judgment, asserting that this case is distinguishable from *Kelly* since (1) all of Troff's restitution payments "have been forwarded by the State to the victim, who is a third-party, non-governmental entity"; (2) when Troff's probation was terminated, the restitution order was "converted to a civil judgment" and was no longer a criminal sanction; and (3) restitution in Utah "'is not a "punishment" but a civil penalty whose purpose is entirely remedial, i.e., to compensate victims for harm caused by the defendant.'"  (Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment and Memorandum in Opposition to Defendants' Motion for Summary Judgment, filed January 14, 2005 (dkt. no. 22) (*In re Jason Derek Troff*, Adv. Proc. No. 04-02491), at 8-9 (quoting *Monson v. Carver*, 928 P.2d 1017, 1027 (Utah 1996)), Appellee's Appendix, filed May 27, 2005 (dkt. no. 8), at 14-15).)

The matter came before the bankruptcy court for hearing on March 4, 2005.

A.     The Bankruptcy Court Order

On March 8, 2005, the bankruptcy court entered its order granting Troff's Motion for Partial Summary Judgment.  (*See* Order Granting Debtor's Motion for Partial Summary Judgment and Denying Defendants' Motion for Summary Judgment, dated March 8, 2005 (dkt. no. 34) (*In re Jason Derek Troff*, Adv. Proc. No. 04-02491) ("Bankr. Ct. Order"); Appellee's Appendix, filed May 27, 2005 (dkt. no. 8), at 1-6.)  The bankruptcy court adopted Troff's view that his restitution obligation was discharged, but concluded that the issue of whether or not the restitution was converted to a civil

4

judgment is irrelevant to its analysis of the law; the court assumed "that at all times, the

restitution judgment remained criminal in nature." (*See* Bankr. Ct. Order at 2, Findings of

Fact ¶ 5.)  The bankruptcy court held that Troff's restitution was not "payable to and for

the benefit of a governmental unit" within the meaning of 11 U.S.C. § 523(a)(7) because

it is ultimately received by a third-party victim who is not a governmental unit.  (*Id.* at 4

("Were the Court to determine that the State benefits from restitution payments forwarded

[to] the victim, it would be hard to imagine any circumstance where the State would not

benefit from restitution payments.").)  Accepting Troff's assertion that criminal restitution

in Utah is defined "as being compensatory in nature and not as punishment," the

bankruptcy court also concluded that Troff's restitution obligation represented

"compensation for actual pecuniary loss," and thus "is not excepted from discharge under

the third element of § 523(a)(7)." (*Id.* at 5.)[1]  Finally, the bankruptcy court ruled that

because this is an issue of first impression in this Circuit, the State had not knowingly

violated the automatic stay, and denied an award of damages for the alleged violation.

(*Id.* at 6.)

     B.    <u>Arguments on Appeal</u>

    On this appeal, the State of Utah contends that (1) 11 U.S.C. § 523(a)(7) is the

appropriate section to govern the dischargeability of criminal restitution orders; (2) the

---

[1] The bankruptcy court suggested that Troff's debt in this case may "stem from wilfull and malicious injury by the debtor" which is excepted from discharge under 11 U.S.C. § 523(a)(6), but did not rule on nondischargeability on that ground.  (*Id.* at 5.)

bankruptcy court should have construed § 523(a)(7) in light of *Kelly v. Robinson*, 479 U.S. 36 (1986); (3) consistent with *Kelly*, Troff's restitution obligation is "payable to and for the benefit of a governmental unit" within the meaning of § 523(a)(7); and (4) the restitution obligation is not "compensation for actual pecuniary loss" within the meaning of that section.  (*See* Appellant's Brief, filed May 12, 2005 (dkt. no. 5), *passim*; Appellant's Reply Brief, filed May 31, 2005 (dkt. no. 10), *passim*.)  Troff responded that the bankruptcy court correctly concluded that his restitution order is not excepted from discharge under 11 U.S.C. § 523(a)(7) because his restitution is not "payable . . . for the benefit of a governmental unit" and because it is "compensation for actual pecuniary loss" within the meaning of that section.  (*See* Appellee's Brief, filed May 27, 2005 (dkt. no. 9), at 4, 7.)

Having heard and considered the arguments advanced by counsel, and having reviewed the briefs and record in this case as well as the pertinent authorities, this Court hereby reverses the bankruptcy court's order and holds that pursuant to 11 U.S.C. § 523(a)(7) as construed in light of *Kelly*, Troff's restitution obligation imposed as part of his state court criminal sentence is excepted from discharge in his Chapter 7 bankruptcy proceeding.

## ANALYSIS

A.    <u>Standard of Review</u>

The district court may affirm, modify or reverse a bankruptcy judge's judgment,

order, or decree, or may remand with instructions for further proceedings.  Fed. R. Bankr.

P. 8013.  The district court exercises *de novo* review over the bankruptcy court's legal

conclusions.  *SLC Ltd. v. Bradford Group West, Inc.*, 999 F.2d 464 (10th Cir. 1993).  The

interpretation and application of the Bankruptcy Code and Rules raise a question of law

which is subject to *de novo* review by this court.  *See In re Gledhill*, 76 F.3d 1070, 1077

(10th Cir. 1996) ("We review the district court's interpretation of the Bankruptcy Rules

*de novo*.  *Unioil v. Elledge (In re Unioil, Inc.)*, 962 F.2d 988, 990 (10th Cir. 1992).");  *In*

*re Chase & Sanborn Corp.*, 904 F.2d 588, 593 (11th Cir. 1990).

B.    <u>Restitution in State Criminal Cases and 11 U.S.C. § 523(a)(7)</u>

This appeal raises a question of statutory construction.

In pertinent part, 11 U.S.C. § 523(a)(7) reads:

> A discharge under section 727, 1141, 1228(b) or 1328(b) does not
> discharge an individual debtor from any debt—
> * * * *
> (7) to the extent such debt is for a fine, penalty, or forfeiture payable
> to and for the benefit of a governmental unit; and is not compensation for
> actual pecuniary loss.

11 U.S.C. § 523(a)(7) (2000).

On its face, § 523(a)(7) does not explicitly address whether a discharge in a

Chapter 7 bankruptcy proceeding bars the further enforcement of restitution orders issued

in state criminal proceedings.[2]  To answer that question, a court must determine the

---

[2]*Compare* 11 U.S.C.A. § 523(a)(13) (2005) ("A discharge under section 727, 1141, 1228 (a), 1228 (b),
or 1328 (b) of this title does not discharge an individual debtor from any debt— * * * * (13) for any payment of
an order of restitution issued under title 18, United States Code;"); 11 U.S.C.A. § 1328(a)(3) (2005) (in a

proper construction of the language of § 523(a)(7)—a subject upon which the Supreme

Court has provided authoritative guidance.

      1.    <u>*Kelly v. Robinson*</u>

In a Connecticut state criminal proceeding in 1980, Carolyn Robinson pled guilty

to a charge of larceny based on her fraudulent receipt of $9,932.95 in state welfare

benefits.  On November 14, 1980, the Connecticut Superior Court sentenced Robinson to

a prison term of not less than one year nor more than three years, suspended the execution

of the sentence and placed Robinson on probation for five years. As a condition of

probation, the judge ordered Robinson to pay restitution to the State of Connecticut

Office of Adult Probation at the rate of $100 per month, commencing January 16, 1981,

and continuing until the end of her probation.  On February 5, 1981, Robinson filed a

voluntary petition under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701 *et seq.*, in

the United States Bankruptcy Court for the District of Connecticut, listing her restitution

obligation as a debt.  On May 14, 1981, the bankruptcy court granted Robinson a

discharge.  Thereafter, the State of Connecticut pursued collection of her restitution as a

nondischargeable debt.  Robinson filed an adversary proceeding in the bankruptcy court,

seeking a declaration that her restitution obligation had been discharged, as well as an

injunction to prevent the State's officials from collecting further payments from her.

Ms. Robinson's case made its way to the United States Supreme Court.  In *Kelly v.*

---

Chapter 13 proceeding, "the court shall grant the debtor a discharge of all debts . . . except any debt— . . . (3) for
restitution, or a criminal fine, included in a sentence on the debtor's conviction of a crime.")

*Robinson*, 479 U.S. 36 (1986), the Court held that Robinson's restitution obligation,

imposed as a condition of probation in her Connecticut criminal case, was not

dischargeable under the Bankruptcy Code because "§ 523(a)(7) preserves from discharge

any condition a state criminal court imposes as part of a criminal sentence."  479 U.S. at

50.  This construction of the statute was grounded in a judicial policy of long standing:

> Of course, the "starting point in every case involving construction of a
> statute is the language itself." . . . But the text is only the starting point. As
> Justice O'Connor explained last Term: """In expounding a statute, we must
> not be guided by a single sentence or member of a sentence, but look to the
> provisions of the whole law, and to its object and policy."" . . .  In this
> case, we must consider the language of . . . [§] 523 in light of the history of
> bankruptcy court deference to criminal judgments and in light of the
> interests of the States in unfettered administration of their criminal justice
> systems.

*Id.* at 43-44 (citations omitted).  Congress enacted the Bankruptcy Code in 1978 "against

the background of an established judicial exception to discharge for criminal sentences,

including restitution orders, an exception created in the face of a statute drafted with

considerable care and specificity."  *Id.* at 46.

> Our interpretation of the Code also must reflect the basis for this
> judicial exception, *a deep conviction that federal bankruptcy courts should
> not invalidate the results of state criminal proceedings*.  The right to
> formulate and enforce penal sanctions is an important aspect of the
> sovereignty retained by the States.   This Court has emphasized repeatedly
> "the fundamental policy against federal interference with state criminal
> prosecutions." *Younger v. Harris,* 401 U.S. 37, 46, 91 S.Ct. 746, 751, 27
> L.Ed.2d 669 (1971).

*Id.* at 47 (emphasis added).  Turning to the language of § 523(a)(7), the *Kelly* Court

explained that on its face, § 523(a)(7) "creates a broad exception for all penal sanctions,

9

whether they be denominated fines, penalties, or forfeitures.  Congress included two

qualifying phrases; the fines must be both "to and for the benefit of a governmental unit,"

and "not compensation for actual pecuniary loss."  *Id.* at 51.  The language of § 523(a)(7)

"protects traditional criminal fines; it codifies the judicially created exception to

discharge for fines."  *Id.* at 51.  "We must decide whether the result is altered by the two

major differences between restitution and a traditional fine.  Unlike traditional fines,

restitution is forwarded to the victim, and may be calculated by reference to the amount of

harm the offender has caused."  *Id.*

> In our view, neither of the qualifying clauses of § 523(a)(7) allows
> the discharge of a criminal judgment that takes the form of restitution.  The
> criminal justice system is not operated primarily for the benefit of victims,
> but for the benefit of society as a whole.  Thus, it is concerned not only with
> punishing the offender, but also with rehabilitating him.  Although
> restitution does resemble a judgment "for the benefit of" the victim, the
> context in which it is imposed undermines that conclusion.  The victim has
> no control over the amount of restitution awarded or over the decision to
> award restitution.  Moreover, the decision to impose restitution generally
> does not turn on the victim's injury, but on the penal goals of the State and
> the situation of the defendant.

*Id.* at 51-52.  Obviously, "compensation is an essential element of a restitution scheme,"

*id.* at 55 (Marshall, J., dissenting), and a criminal restitution order serves a compensatory

function, at least for those victims of crime who actually receive payment.  Nevertheless,

as the *Kelly* Court noted,

> Restitution is an effective rehabilitative penalty because it forces the
> defendant to confront, in concrete terms, the harm his actions have caused.
> Such a penalty will affect the defendant differently than a traditional fine,
> paid to the State as an abstract and impersonal entity, and often calculated

> without regard to the harm the defendant has caused. Similarly, the direct
> relation between the harm and the punishment gives restitution a more
> precise deterrent effect than a traditional fine.   See Note, *Victim Restitution
> in the Criminal Process: A Procedural Analysis*, 97 Harv.L.Rev. 931,
> 937-941 (1984).

*Id.* at 49 n.10.  Concerned that the discharge of criminal restitution orders in Chapter 7

proceedings "would hamper the flexibility of state criminal judges in choosing the

combination of imprisonment, fines, and restitution most likely to further the

rehabilitative and deterrent goals of state criminal justice systems," *id.* at 49, the *Kelly*

Court concluded:

> Because criminal proceedings focus on the State's interests in
> rehabilitation and punishment, rather than the victim's desire for
> compensation, we conclude that restitution orders imposed in such
> proceedings operate "for the benefit of" the State.   Similarly, they are not
> assessed "for . . . compensation" of the victim.  *The sentence following a
> criminal conviction necessarily considers the penal and rehabilitative
> interests of the State.  Those interests are sufficient to place restitution
> orders within the meaning of § 523(a)(7).*

*Id.* at 53 (emphasis added & footnote omitted).

Subsequent appellate cases reflect *Kelly*'s broad construction of § 523(a)(7).  For

example, in *In re Soderling*, 998 F.2d 730 (9th Cir. 1993), Judge Fletcher read *Kelly* to

hold "that in Chapter 7 proceedings a state court criminal restitution order is

nondischargeable under § 523(a)(7)."  998 F.2d at 732.[3]  Similarly, *Nelson v. La Crosse

County Dist. Atty.*, 301 F.3d 820 (7th Cir. 2002), noted that "[c]riminal restitution orders

---

[3]*Soderling* followed *Kelly* in concluding that a "claim based on [a] federal court criminal restitution
order is nondischargeable under 11 U.S.C. § 523(a)(7)."  *Id.* at 733.

are generally non-dischargeable in bankruptcy.  *See* 11 U.S.C. § 523(a)(7); *Kelly v.*

*Robinson*, 479 U.S. 36, 53, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986) (holding that criminal

restitution orders fall within the meaning of § 523(a)(7))."  301 F.3d at 825 n.3.  *See also*

 Annotation, *Debts Arising From Penalties as Exceptions to Bankruptcy Discharge Under*

*§§ 523(a)(7), (13) and 1328(a) of Bankruptcy Code of 1978 (11 U.S.C.A. §§ 523(a)(7),*

*(13) and 1328(a)),* 150 A.L.R. Fed. 159, 309-334 (1998 & Supp. 2004), and cases cited

therein; 4 *Collier on Bankruptcy* ¶ 523.13[1] (15th rev. ed. 2004) ("*Kelly v. Robinson*

establishes that fines or any condition imposed as part of a criminal sentence is

nondischargeable under section 523(a)(7).").

2.    <u>Congressional Action Since *Kelly*</u>

Since *Kelly* was decided in 1986, Congress has taken no action to modify or

abrogate *Kelly*'s exception of state criminal restitution orders from discharge in chapter 7

bankruptcy proceedings.  To the contrary, Congress expressly extended that exception to

discharge orders in chapter 13 proceedings,[4] and has codified the exception from

discharge of federal criminal restitution orders recognized in cases such as *Soderling*.

In 1990, Congress enacted the Criminal Victims Protection Act of 1990 as part of

the Crime Control Act of 1990, Pub.L. No. 101-647, 104 Stat. 4789 (1990), which added

11 U.S.C. 1328(a)(3), expressly excepting from discharge in Chapter 13 cases those debts

---

[4]*Pennsylvania Department of Public Welfare v. Davenport*, 495 U.S. 552, 562, (1990), held that state criminal restitution orders were not exempt from discharge under Chapter 13 of the Bankruptcy Code, "a conclusion speedily undone by the enactment of 11 U.S.C. § 1328(a)(3)."  *In re Towers*, 162 F.3d 952, 954 (7th Cir. 1998).

for "restitution included in a sentence on the debtor's conviction of a crime."  The Senate

Judiciary Committee Report which accompanied the legislation explained that "this

amendment will have the effect of overruling the Supreme Court's recent decision in

*Pennsylvania Department of Public Welfare v. Davenport,* 495 U.S. 552, 110 S.Ct. 2126,

109 L.Ed.2d 588 (1990), which held that criminal restitution obligations are dischargeable

debts under chapter 13. . . .  Importantly, these provisions will prevent Federal bankruptcy

courts from invalidating the results of State criminal proceedings."  S. Rep. No. 434,

101st Cong., 2d Sess. 8 (1990), *reprinted in* 6 1990 U.S.C.C.A.N. 4065, 4071.  Likewise,

the House Committee Report on the legislation explained that the amendment "responds

to the May 29, 1990 *Pennsylvania Department of Public Welfare v. Davenport* decision,

in which the Supreme Court of the United States ruled that criminal restitution debts are

dischargeable upon completion of a Chapter 13 reorganization plan."  H.R.Rep. No.

681(I), 101st Cong., 2d Sess. 165 (1990), *reprinted in* 8 1990 U.S.C.C.A.N. 6472, 6571.

The amendment "corrects this result by adding a new paragraph (3) to Section 1328(a) so

that criminal restitution payments will be nondischargeable in Chapter 13."  *Id.*

According to the House Report, this change was

> not intended to alter in any way the coverage of section 523(a)(7) , as that
> paragraph has been interpreted in *Kelly v. Robinson,* 479 U.S. 36, 107 S.Ct.
> 353, 93 L.Ed.2d 216 (1986), to make criminal restitution obligations
> nondischargeable in Chapter 7. As a result of the change made [in adding §
> 1328(a)(3)], *no debtor with criminal restitution obligations will be able to
> discharge them through any bankruptcy proceeding*."

 *Id.* (emphasis added).

13

In 1994, Congress enacted the Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, Title XXXII, § 320934, 108 Stat. 2135, which added sub-paragraph (13) to § 523(a), excepting federal restitution orders imposed under Title 18 of the United States Code from discharge in bankruptcy.

Given "the inaction of Congress to amend 11 U.S.C. § 523(a)(7) after *Kelly* and *Davenport*, and . . . subsequent modifications to other sections of the Bankruptcy Code . . . intended to make clear that restitution is not dischargeable in bankruptcy," the court in *Farmers Insurance Exchange v. Mills (In re Mills)*, 290 B.R. 822 (Bankr. D. Colo. 2003), held that the criminal restitution order at issue in that case should be deemed nondischargeable. *Id.* at 830.[5] Relying on the "presumption 'that Congress expects its statutes to be read in conformity with th[e] Court's precedents[,]'" *Mills* concluded that "Congress was content with the conclusion of the Supreme Court in *Kelly* and *Davenport* that restitution obligations are not dischargeable under 11 U.S.C. § 523(a)(7) and that the statute need not be disturbed." *Id.* at 831 (quoting *Porter v. Nussle,* 534 U.S. 516, 528 (2002) (quoting *United States v. Wells,* 519 U.S. 482, 495 (1997))).

> It is evident that Congress has demonstrated its intent to make restitution obligations nondischargeable by adding 11 U.S.C. § 523(a)(13) and adding and subsequently amending Section 1328(a)(3) since *Kelly* and *Davenport*. While Congress has not amended 11 U.S.C. § 523(a)(7) since *Kelly,* it seems that Congress is not dissatisfied with, nor does it want to disturb the Supreme Court's holding in *Kelly* making criminal restitution in Chapter 7

---

[5]*Mills* examines these legislative developments in some detail, *see Mills*, 290 B.R. at 831-833, and this court need not duplicate that examination here.  *See also Hardenberg v. Commonwealth of Virginia, Dept. of Motor Vehicles (In re Hardenberg),* 42 F.3d 986, 989-992 (6th Cir. 1994).

14

cases nondischargeable.

*Id.* at 833.

C.      The Bankruptcy Court Order & *Kelly*

*Kelly*'s reading of § 523(a)(7), that "§ 523(a)(7) preserves from discharge any

condition a state criminal court imposes as part of a criminal sentence." 479 U.S. at 50,[6]

admits of no distinction between criminal restitution orders involving victims who are

governmental entities and criminal restitution orders involving private individuals,

corporations, or other "non-governmental" victims of crime.  In so ruling, the *Kelly* Court

clearly understood that "[u]nlike traditional fines, restitution is forwarded to the victim,

and may be calculated by reference to the amount of harm the offender has caused."  *Id.*

at 51-52.  Yet these "two major differences between restitution and a traditional fine" did

not alter *Kelly*'s conclusion that "neither of the qualifying clauses of § 523(a)(7) allows

the discharge of a criminal judgment that takes the form of restitution."  *Id.* at 51, 52.

---

[6]Before the bankruptcy court and now before this court, Troff argues that "[t]he actual holding of *Kelly* is much narrower, of course, since it is limited to the facts that were before the Court[.]" (Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment and Memorandum in Opposition to Defendants' Motion for Summary Judgment, filed January 14, 2005 (dkt. no. 22) (*In re Jason Derek Troff*, Adv. Proc. No. 04-02491), at 7, Appellee's Appendix, filed May 27, 2005 (dkt. no. 8), at 13); Appellee's Brief, filed May 27, 2005 (dkt. no. 9), at 5.)

However, Troff's argument appears to treat *Kelly* as though it was a summary disposition issued without benefit of a written opinion explicating the Court's reasoning.  *See, e.g.*, *Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 182, (1979) ("[T]he precedential effect of a summary affirmance can extend no farther than 'the precise issues presented and necessarily decided by those actions.'" (quoting *Mandel v. Bradley*, 432 U.S. 173, 176 (1977))); *Lecates v. Justice of the Peace Court No. 4 of Del.*, 637 F.2d 898, 904 (3rd Cir. 1980) ("the precedential value of a summary disposition by the Supreme Court is to be confined to the exact facts of the case and to the precise question posed in the jurisdictional statement").  Clearly, *Kelly* was *not* a summary disposition and cannot now be so confined.  *See* 1B James Wm. Moore, et al., *Moore's Federal Practice* ¶ 0.402[2] (2d ed. 1996) ("When cases are disposed of by written opinion, the opinion is the principal evidence of the scope of the decision." (footnote omitted)).

Deeming the *Kelly* Court's analysis of whether criminal restitution orders operate "for the benefit of" the State to be "dicta," the bankruptcy court attempted to distinguish *Kelly* by noting that this case involves restitution payable to a private victim, whereas the victim in *Kelly* was a governmental unit.  (*See* Bankr. Ct. Order at 3.)  The bankruptcy court adopted the reasoning of the Seventh Circuit in *In re Towers*, 162 F.3d 952 (1999),[7] in saying that "[a] payment benefits a governmental unit when the payment goes into the governmental unit's coffers and stays there," and in holding that Troff's restitution in this case was not "payable to and for the benefit of a governmental unit," was ordered as "compensation for actual pecuniary loss," and thus does "not fit the requirements set forth under § 523(a)(7)" for exception from Troff's Chapter 7 discharge.  (Bankr. Ct. Order at 4-6.)

The Third Circuit had reached a similar conclusion concerning a *federal* criminal restitution order involving non-governmental victims of the defendant's fraud in *In re Rashid*, 210 F.3d 201, 208 (3d Cir. 2000).[8]  However, as the *Rashid* court acknowledged, *Towers* is distinguishable from *Kelly* because *Towers* dealt with a civil restitution

---

[7]In *Towers*, the Seventh Circuit observed that "[r]ead without the aid of this doctrine of federalism, § 523(a)(7) offers weak support for exempting restitution orders from discharge" because it "does not mention restitution, and it operates only if the penalty is 'for the benefit of a governmental unit'--a condition not easy to satisfy when the governmental body is collecting for private creditors." 162 F.3d at 954.  *Towers* concluded that the context in which the word "'benefit' appears–'payable to and for the benefit of a governmental unit'--implies that the 'benefit' in question is the benefit of the money that is 'payable to' the governmental unit." *Id.* at 956.

[8]The Third Circuit concluded that "Although the record is unclear whether Rashid's restitution obligations were to be directly paid to his victims or were to pass through a governmental unit before reaching the victims, it is clear that the benefit-- the money--is ultimately payable to the victims. *See Towers*, 162 F.3d at 955. Accordingly, we find that Rashid's restitution obligation is not exempt from discharge pursuant to § 523(a)(7)." 210 F.3d at 208.

judgment issued pursuant to a state consumer protection statute: "Federal criminal restitution orders and civil restitution orders share one important distinction from *Kelly*--neither implicates the federal court's longstanding 'reluctan[ce] to interpret federal bankruptcy statutes to remit state criminal judgments,' *Kelly*, 479 U.S. at 44, 107 S.Ct. 353." *Rashid*, 210 F.3d at 208 n.3.  *Towers* itself acknowledged the doctrine of federalism that provided the footing for *Kelly*'s holding excepting state criminal restitution orders from Chapter 7 discharge.  *Towers*, 162 F.3d at 954.  Nothing in *Towers* suggests that its "payable to and for the benefit of" analysis under § 523(a)(7) outweighs the federalism concerns bearing upon state *criminal* restitution orders that *Kelly* found to be decisive—federalism concerns left entirely unaddressed by the bankruptcy court's order in this case.

Troff attempted to sidestep the rule and reasoning of *Kelly* by recourse to the "plain and unambiguous language" of § 523(a)(7), which he argues should be "strictly construed against" the State, and "liberally construed . . . in favor of the Debtor." (Appellee's Brief at 4 (citing *Skull Valley Band of Goshute Indians v. Chivers (In re Chivers)*, 275 B.R. 606, 613 (Bankr. D. Utah 2002), and *Caldwell v. Joelson (In re Joelson)*, 307 B.R. 689, 696 (10th Cir. BAP 2004)).)   The bankruptcy court echoed Troff's argument, asserting that "[t]he plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intention of the drafters."  (Bankr. Ct. Ord. at 4 (citing

17

*United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 (1989)).)

Yet neither Troff's brief nor the bankruptcy court's order offer any explanation as to how or why this District may simply ignore both the rule of construction applied by the Supreme Court to the language of § 523(a)(7),[9] or the fundamental policy considerations that guided its construction of § 523(a)(7) in the context of restitution ordered as part of a state court criminal sentence.  As explained above, the *Kelly* Court construed § 523(a)(7) in light of  its "deep conviction that federal bankruptcy courts should not invalidate the results of state criminal proceedings" and "the history of bankruptcy court deference to criminal judgments and in light of the interests of the States in unfettered administration of their criminal justice systems," *Kelly*, 479 U.S. at 44, 47, the "federalism concerns" acknowledged by both *Towers* and *Rashid*.  Nor do Troff or the bankruptcy court chart an analytical course that steers this case clear of *Kelly*'s express determination that "neither of the qualifying clauses of § 523(a)(7) allows the discharge of a criminal judgment that takes the form of restitution."  479 U.S. at 52.

Of the cases cited by Troff, only *Verola v. Colton (In re Verola)*, 296 B.R. 266 (Bankr. S.D. Fla. 2003), and *Olsen v. McNabb (In re McNabb)*, 287 B.R. 820 (Bankr. D.

---

[9]   "'"In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy."'"  *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 222, 106 S.Ct. 2485, 2494, 91 L.Ed.2d 174 (1986) (quoting *Mastro Plastics Corp. v. NLRB*, 350 U.S. 270, 285, 76 S.Ct. 349, 359, 100 L.Ed. 309 (1956) (in turn quoting *United States v. Heirs of Boisdoré*, 8 How. 113, 122, 12 L.Ed. 1009 (1849))).

*Kelly*, 479 U.S. at 43.

Colo. 2003), arose in the context of a restitution ordered as part of a state criminal

sentencing.[10]  (*See* Appellee's Brief at 5-6.)  The *Verola* court completely ignored the

federalism concerns that the Supreme Court found compelling in *Kelly*, and did so

without explanation.[11]  The *McNabb* court "decline[d] to extend" *Kelly* to "the facts of

this case, where plaintiff is the payee of the restitution award," also without addressing

*Kelly*'s federalism concerns.  287 B.R. at 821 n.3.

> ### D.      Restitution, Compensation and Rehabilitation in Criminal Sentencing

The bankruptcy court's order also adopted Troff's view that his restitution

obligation falls outside of the § 523(a)(7) exception because it "compensates for actual

pecuniary loss." (Bankr. Ct. Ord. At 5.)  Troff and in turn, the bankruptcy court, relied on

a Utah Supreme Court case, *Monson v. Carver*, 928 P.2d 1017 (Utah 1996), which

concluded that a restitution order issued by the Utah Board of Pardons as a condition of

---

[10]Though *National Auto Sales, Inc. v. Wilson (In re Wilson)*, 299 B.R. 380 (Bankr. E.D. Va. 2003), cited by Troff, involved restitution ordered in a state criminal proceeding based upon the amount of the plaintiff's loss, "the amount of restitution was not ordered by the criminal court, which left the amount to be determined by a civil court in a separate law suit." 299 B.R. at 384.  However, *Wilson* at least acknowledged that "[t]he Supreme Court interpreted § 523(a)(7) based in part upon its 'deep conviction that federal bankruptcy courts should not invalidate the results of state criminal proceedings' and further 'in light of the history of bankruptcy court deference to criminal judgments and in light of the interests of the States in unfettered administration of their criminal justice systems,'" *id.* at 381-382 (quoting *Kelly*, 479 U.S. at 44, 47); *Wilson* also noted the split of authority among bankruptcy courts concerning the application of § 523(a)(7) to restitution orders, and the lack of authority as to the payment of restitution "directly to the plaintiff in an amount based on plaintiff's damages and to be determined in a subsequent civil court trial to be brought by plaintiff."  *Id.* at 382-384.

[11]*Verola* relied upon *Towers*, but made no mention of *Towers*' reference to "[t]he principal interpretive tool used in Kelly--the proposition that courts are 'reluctant to interpret federal bankruptcy statutes to remit state criminal judgments' (479 U.S. at 44, 107 S.Ct. 353)." *Towers*, 162 F.3d at 954.  *Verola* even omitted the highlighted language in quoting the following passage from the *Towers* opinion: "*Read without the aid of this doctrine of federalism*, § 523(a)(7) offers weak support for exempting restitution orders from discharge, . . ." *Compare id.* at 954 *with* 296 B.R. at 271.

the defendant's release on parole was not a "punishment" for purposes of the Double

Jeopardy Clause, but a civil penalty whose purpose was "entirely remedial." *Monson*,

928 P.2d at 1027.  The Board's restitution order at issue in *Monson* was not imposed as

part of the defendant's criminal sentence.  It reflected the independent exercise of the

Board's "plenary authority . . . to impose conditions of parole" under Art. VII, § 12 of the

Utah Constitution, which grants the Board the power to "commute punishments, and

grant pardons after convictions" upon "such conditions as may be established by the

Legislature." *Id.* at 1025.

   In this case, it remains uncontroverted that the order of restitution was made by the

state court as part of Troff's criminal sentence.  The Utah law applicable at the time of

Troff's sentencing in 1997 and his resentencing in October of 2000 provided that:

> [w]hen a person is convicted of criminal activity that has resulted in
> pecuniary damages, in addition to any other sentence it may impose, *the
> court shall order that the defendant make restitution to victims of crime* as
> provided in this subsection, or for conduct for which the defendant has
> agreed to make restitution as part of a plea agreement. . . .

Utah Code Ann. § 76-3-201(4)(a)(i) (1999) (amended 2001) (emphasis added).[12]  "In

determining whether restitution is appropriate, the court shall follow the criteria and

procedures provided in" the statute, Utah Code Ann. § 76-3-201(4)(a)(ii) (1999),

including the requirement that the court "determine complete restitution and court-

---

[12]Restitution orders in criminal sentencing in Utah is currently governed by Utah Code Ann. §§ 76-3-201(4), 76-3-201.1 (2004), and the Utah Crime Victims Restitution Act, Utah Code Ann. §§ 77-38a-101 *et seq.* (2004), enacted in 2001.

ordered restitution." Utah Code Ann. § 76-3-201(4)(c) (1999). "Complete restitution"

refers to "the restitution necessary to compensate a victim for all losses caused by the

defendant," and "court-ordered restitution"refers to "the restitution the court having

criminal jurisdiction orders the defendant to pay as a part of the criminal sentence at the

time of sentencing." Utah Code Ann. § 76-3-201(4)(c)(i), (ii) (1999). Under this

sentencing scheme, "court-ordered restitution" should reflect "complete restitution" as

tempered by rehabilitative considerations:

> In determining the monetary sum and other conditions for court-
> ordered restitution, the court shall consider the factors listed in Subsection
> 8(b) [governing complete restitution] and:
>
> (i) the financial resources of the defendant and the burden
> that payment of restitution will impose, with regard to the
> other obligations of the defendant;
> (ii) the ability of the defendant to pay restitution on an
> installment basis or on other conditions to be fixed by the
> court;
> (iii) *the rehabilitative effect on the defendant of the payment
> of restitution and the method of payment*; and
> (iv) other circumstances which the court determines make
> restitution inappropriate.

Utah Code Ann. § 76-3-201(8)(c) (1999) (current version at Utah Code Ann. § 77-38a-

302(5)(c) (2004)) (emphasis added).

Like the Connecticut restitution statute examined in *Kelly*, this Utah statute "does

not require imposition of restitution in the amount of the harm caused. Instead, it

provides for a flexible remedy tailored to the defendant's situation." *Kelly*, 479 U.S. at

53.[13]  Assuming compliance with Utah Code Ann. § 76-3-201(8)(c) (1999), the *court-ordered* restitution imposed on Troff as part of his criminal sentencing must thus have been measured, at least in part, in terms of considerations of its rehabilitative effect—consistent with the analysis in *Kelly*—to assist in punishing and rehabilitating Troff by holding him personally accountable for the real-world consequences of his criminal act, and not for the exclusive and specific purpose of compensating the victim of Troff's arson offense.[14]

    E.    <u>Practical Consequences of the Bankruptcy Court's Order</u>

Adherence to the rule and reason of *Kelly* vindicates the expectations of state court sentencing judges that the balance of incarceration, fine, supervision, and restitution that

---

[13]Thus, debtor's counsel may have overstated things a bit in arguing both to the bankruptcy court and to this court that "the purpose of Utah's restitution system is exactly the opposite of the state involved in the *Kelly* case."  (Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment and Memorandum in Opposition to Defendants' Motion for Summary Judgment, filed January 14, 2005 (dkt. no. 22) (*In re Jason Derek Troff*, Adv. Proc. No. 04-02491), at 9, Appellee's Appendix, filed May 27, 2005 (dkt. no. 8), at 15); Appellee's Brief, filed May 27, 2005 (dkt. no. 9), at 6.)

While the civil restitution order by the Board of Pardons in *Monson v. Carver* was characterized as "indistinguishable from compensatory civil damages" and not as "a 'punishment' for double jeopardy purposes," 928 P.2d at 1028, the Utah court reversed and remanded that case for "entry of an order directing the Board to comply with the proper statutory procedure" that "takes into account the statutory factors," including consideration of rehabilitative effect under § 76-3-201(4)(c).  *Id.* at 1028-1031.  If, as Appellee asserts, "[t]he actual holding" of a case "is much narrower, of course, since it is limited to the facts that were before the [court issuing the opinion]," (Appellee's Brief at 5), then the passage from the *Monson* opinion—quoted repeatedly by the Appellee—that restitution "is entirely remedial, i.e., to compensate victims for the harm caused by a defendant," 928 P.2d at 1027, may itself be considered "dictum," particularly outside of the context of a double jeopardy and due process challenge to a non-judicial civil restitution order that failed to take rehabilitative considerations into account as required by the statute.

[14]Indeed, from the limited state court record materials submitted by the Appellee, it appears that Troff's diligent payment of installments toward his restitution obligation was a factor in the Utah Adult Probation and Parole division's recommendation that his second 36-month term of probation be terminated less than one year after it was imposed.  (Adult Probation and Parole, Progress/Violation Report, Appellee's Appendix, filed May 27, 2005 (dkt. no. 8), at 37-38.)

is struck each time a criminal sentence is imposed will remain in place, serving the

punitive, rehabilitative, and restitutive purposes of the state criminal sentencing process.

As Justice Blackmun observed,

> The *Kelly* Court stressed this compelling federalism concern, terming it
> "one of the most powerful of the considerations that should influence a
> court considering equitable types of relief," and recognized that it "must
> influence our interpretation of the Bankruptcy Code." 479 U.S., at 49, 107
> S.Ct., at 361. The Court was concerned that "federal remission of
> judgments imposed by state criminal judges . . . would hamper the
> flexibility of state criminal judges in choosing the combination of
> imprisonment, fines, and restitution most likely to further the rehabilitative
> and deterrent goals of state criminal justice systems." *Id.*, at 49, 107 S.Ct.,
> at 360-361.

*Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 573 (1990)

(Blackmun, J., dissenting).

Unless or until the rule of *Kelly* is modified or abrogated by the Congress,

restitutionary obligations imposed as part of a criminal sentence remain a part of that

sentence, unimpeded by the bar of a federal bankruptcy discharge order.  *Kelly* makes no

distinction between state criminal restitution orders involving "governmental" victims and

those involving victims of crime in the private sector.  The federalism concerns

articulated in *Kelly* find reasoned application to all.

In contrast, the bankruptcy court's extension of the *Towers*/*Rashid* "payable to and

for the benefit of" analysis of to state criminal sentencing orders without regard to *Kelly*'s

federalism concerns—an extension that neither *Towers* nor *Rashid* themselves

suggest—serves to frustrate those same expectations, disrupting the balance achieved by

23

the sentencing mix, complicating the day-to-day execution of state criminal sentences and

rendering many state criminal restitution orders vulnerable to discharge based solely on

the identity of the victims of an offender's crimes.[15]

> The judgment of sentencing courts and legislators that rehabilitation is the
> most effective form of punishment will be tempered by the knowledge that
> convicted criminals easily may avoid a sentence requiring restitution merely
> by obtaining a . . . discharge.   Sentencing courts will be faced with a
> dilemma.  The sentencing judge must either risk that a Federal bankruptcy
> judge will undermine a restitution order, thus absolving the convicted
> criminal from punishment, or impose a harsher and less appropriate term of
> imprisonment, a sentence that the Federal bankruptcy court will be unable
> to undermine. . . .

*Davenport*, 495 U.S. at 573 (Blackmun, J., dissenting).

In the context of criminal sentencing, certainty of consequence often proves

critical to achieving punitive and rehabilitative goals.  Under the construction of §

523(a)(7) urged by Troff and adopted by the bankruptcy court order, uncertainty of

consequence would often prevail.

This seems to be precisely the kind of federal interference with state criminal

proceedings that the *Kelly* Court sought to avoid.

As Justice Blackmun observed when a similar question arose in *Davenport*:

A bankruptcy court discharge of a criminal restitution order is a deep
intrusion by the federal courts into the State's sovereign power. It vacates a

---

[15]Remembering that restitution may be payable for harm to both governmental and private victims of the same criminal offense conduct, Troff's construction of § 523(a)(7) raises the specter of state authorities having to parse a single restitution order to determine what portion may be "payable to" government, and therefore non-dischargeable, and what portion may be "payable to" others and therefore barred by a Chapter 7 discharge.

criminal sentence that has presumably been entered in full accord with all substantive and procedural mandates of the Constitution. I seriously doubt that "Congress lightly would limit the rehabilitative and deterrent options available to state criminal judges." *Kelly*, 479 U.S., at 49, 107 S.Ct., at 360-361.

495 U.S. at 573 (Blackmun, J., dissenting).[16]

Moreover, Troff's construction of § 523(a)(7) would render many state criminal restitution orders vulnerable to discharge in a Chapter 7 proceeding where those same orders would clearly be non-dischargeable in a Chapter 13 proceeding. As a practical matter and as a general rule, the discharge available under Chapter 13 is much broader than a discharge available to a debtor in Chapter 7. *See, e.g., Davenport*, 495 U.S. at 563 ("Congress secured a broader discharge for debtors under Chapter 13 than Chapter 7"); *see generally* 11 U.S.C. § 1328. As *Mills* points out, "To permit the discharge, here, in a Chapter 7 case, where it would *not* be discharged in a Chapter 13 case would be wholly inconsistent and anomalous with bankruptcy theory and practice." 290 B.R. at 834 (emphasis in original; footnote omitted).

F.      The Continuing Authority of *Kelly*

Joining other courts that have reached a similar conclusion, this court is satisfied that the State of Utah correctly argues that *Kelly* is controlling here. *See, e.g., Thompson v. Hewitt*, 311 B.R. 415, 423-426 (E.D.Pa. 2004); *In re Steiger*, 159 B.R. 907, 909-912

---

[16]Though Justice Blackmun's view did not prevail on the day that *Davenport* was decided, Congress acted almost immediately to abrogate the majority ruling in *Davenport* by enacting an amendment, 11 U.S.C. § 1328(a)(3), that expressly renders all criminal restitution obligations non-dischargeable in Chapter 13 proceedings. *See supra* at 12-13.

(9th Cir. BAP 1993); *In re Mills*, 290 B.R. at 828-838; *In re LaRoche*, 207 B.R. 369, 371 (Bankr. D.R.I. 1997);  *North Am. Sci. Association, Inc. v. Clark ( In re Clark)*, 222 B.R. 114, 118-119 (Bankr. N.D. Ohio 1997); *Neff v. Knodle (In re Knodle)*, 187 B.R. 660, 662-664 (Bankr. D.N.D. 1995); *Clifford Elecs., Inc. v. Prieto (In re Prieto)*, 169 B.R. 22, 24-25 (Bankr. D.N.J. 1994); *In re Sokol*, 170 B.R. 556, 559 (Bankr. S.D.N.Y. 1994), *affirmed on other grounds*, 181 B.R. 27 (S.D.N.Y. 1995); *Zajder v. Hills Dep't Store (In re Zajder)*, 154 B.R. 885, 886-887 (Bankr. W.D.Pa. 1993); *Thompson v. Lewis (In re Thompson)*, 77 B.R. 646, 647-648 (Bankr. E.D. Tenn. 1987); *cf. National Auto Sales, Inc. v. Wilson (In re Wilson)*, 299 B.R. at 382 ("It appears that a majority of decisions have held that criminal restitution orders payable to victims of a debtor's criminal conduct are excepted from discharge under authority of the Supreme Court's ruling in *Kelly v. Robinson*.  These decisions give great weight to the Supreme Court's strongly worded opinion that bankruptcy courts should not invalidate "state criminal proceedings." 479 U.S. at 44, 47, 107 S.Ct. at 358, 360; . . .").

The bankruptcy court is correct that "[t]he words of the statute require that a governmental unit benefit from the payment" of court-ordered criminal restitution. (Bankr. Ct. Ord. at 4.)  As *Kelly* explains, however, the State has a significant interest in rehabilitation and punishment that is vindicated through its criminal justice system:

> Because criminal proceedings focus on the State's interest in rehabilitation and punishment, rather than the victim's desire for compensation, we conclude that restitution orders imposed in such proceedings operate "for the benefit of" the State.  Similarly, they are not assessed "for . . .

26

compensation" of the victim.  The sentence following a criminal conviction
necessarily considers the penal and rehabilitative interests of the State.
*Those interests are sufficient to place restitution orders within the meaning
of 523(a)(7).*

*Kelly,* 479 U.S. at 53 (emphasis added).[17]

The restitution obligation imposed in this case is not simply a matter of
compensation for actual pecuniary loss to the victim of Troff's arson offense.  It serves
important penological and rehabilitative goals entirely apart from an effort to compensate
for pecuniary loss.[18]  Where a restitution obligation is imposed as part of a criminal
sentence, the defendant must bear direct—and inescapable—personal responsibility for
the harmful consequences of his or her criminal conduct.  The message of personal
accountability is the same message, whether the victims of the defendant's criminal
conduct are few or many, governmental or private, known or unknown.

*Kelly* reconciles the language of § 523(a)(7) in a fashion that recognizes the penal
and rehabilitative purposes of criminal restitution orders, and avoided needless

_____

[17]In *Rashid*, the Third Circuit acknowledged that "[a]rguably, restitution paid to a private victim is still
paid for the benefit of the Government—ie., the Government receives the benefit of criminal deterrence." 210
F.3d at 207.  For the *Rashid* court, however, the absence of important federalism concerns in the context of a
federal restitution order tipped the interpretive scales in favor of dischargeability.

[18]This court's conclusion is not altered by the fact that Troff's restitution order was converted to a civil
judgment.  *See Warfel v. City of Saratoga (In re Warfel)*, 268 B.R. 205, 211-215 (9th Cir. BAP 2001) (the fact
that state law allows enforcement of the restitution obligation as a civil judgment does not divest the restitution
obligation of its identity as part of the criminal sentence; nor does it imply that such judgment is no longer penal
in nature); *In re Bova*, 326 F.3d 300, 302 (1st Cir. 2003) (a civil judgment that arose from an unsatisfied
criminal restitution order was nondischargeable in bankruptcy because it was merely a civil enforcement
mechanism for collecting the fundamentally penal obligation) (construing 11 U.S.C. § 1328). The State of Utah
has enacted a scheme for collection of its criminal restitution orders as civil judgments, *see* Utah Code Ann. §§
76-3-201(4), 76-3-201.1, 77-18-1(10), 77-18-6 (2004), which similarly does not alter the penal and rehabilitative
nature of the restitutive obligation in the present case.

interference with state enforcement of restitution obligations.  Recognizing this, Congress

extended the rule of *Kelly* to Chapter 13 proceedings after *Davenport*, and to federal

criminal restitution orders, to which *Kelly*'s federalism concerns do not apply.

*Kelly*'s reading of § 523(a)(7) is consistent with the original intent of the drafters of the

Bankruptcy Code, who said that "[t]he bankruptcy laws are not a haven for criminal

 offenders, but are designed to give relief from financial over extension."  H.R.Rep. No.

95-595, at 342 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6299.  That intent finds

reflection in the more recent expression of congressional understanding that §523(a)(7)—

"as that paragraph has been interpreted in *Kelly v. Robinson,* 479 U.S. 36, 107 S.Ct. 353,

93 L.Ed.2d 216 (1986), to make criminal restitution obligations nondischargeable in

Chapter 7"—taken together with § 1328(a)(3), ensures that "no debtor with criminal

restitution obligations will be able to discharge them through any bankruptcy

proceeding."  H.R.Rep. No. 681(I), 101st Cong., 2d Sess. 165 (1990), *reprinted in* 8 1990

U.S.C.C.A.N. 6472, 6571.[19]

At this point, a departure from the rule and reason of *Kelly* in favor of drawing a

purely pecuniary distinction between state criminal restitution orders affecting

governmental and private victims would indeed appear to result in one of those "rare

cases in which the literal application of a statute"—giving no consideration to important

---

[19]This court simply cannot reconcile this expression with the assertion that "[t]here is nothing
demonstrably at odds with interpreting the intention of Congress to require that a governmental unit to both rake
receipt of a payment, and keep it in order for the stream of payments to be excepted from discharge" pursuant to
§ 523(a)(7).  (Bankr. Ct. Ord. At 4.)

federalism concerns—"will produce a result demonstrably at odds with the intention of its drafters," (Bankr. Ct. Ord. at 4; *see United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 (1989)), even more so in light of relevant congressional action since *Kelly* was decided in 1986.  *See also Davenport*, 495 U.S. at 563 ("We will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended a departure." (citing *Kelly*, 479 U.S. at 47)); *Porter v. Nussle,* 534 U.S. 516, 528 (2002) ("This Court generally 'presume[s] Congress expects its statutes to be read in conformity with th[e] Court's precedents.'") (quoting *United States v. Wells,* 519 U.S. 482, 495 (1997)).

As a general rule, under the doctrine of *stare decisis*, inferior courts are obligated to apply the law as decided by courts to which they owe obedience, and in particular,

> [a]ll other American courts, state and federal, owe obedience to the
> decisions of the Supreme Court of the United States on questions of federal
> law, and a judgment of the Supreme Court provides the rule to be followed
> in all such courts until the Supreme Court sees fit to reexamine it.

1B James Wm. Moore, et al., *Moore's Federal Practice* ¶ 0.402[1], at I-10 (footnote omitted) (2d ed. 1996); *see In re Hannah*, 316 B.R. 57, 60 (Bankr. D.N.J. 2004) (bankruptcy court "is bound to follow Supreme Court . . . precedent when interpreting statutes").  "The binding precedent rule, that lower courts must follow the holdings of their court of appeals and the Supreme Court, affords a lower court no discretion where a higher court has already decided the issue before it."  *In re Swanson*, 289 B.R. 372, 374 (Bankr. C.D.Ill. 2003) (citing *Johnson v. DeSoto County Bd. of Comm'rs*, 72 F.3d 1556,

1559 n. 2 (11th Cir. 1996)).[20]

Appellee Troff has advanced no compelling reason warranting a departure by this court—or its bankruptcy department—from the rule and reason of *Kelly v. Robinson* as that precedent bears upon the issue now before this court—the construction of § 523(a)(7) and the nondischargeability in a Chapter 7 proceeding of restitution ordered as part of a state criminal sentence.  Supreme Court case law since *Kelly* "does not signal

---

[20]As noted above, Troff seeks to avoid this binding precedent rule by characterizing the relevant language of *Kelly* as "dicta."  (*See, e.g.*, Appellee's Brief at 5.)  Of course, "What is at stake in distinguishing holding from dictum is that a dictum is not authoritative."  *United States v. Crawley*, 837 F.2d 291, 292 (7th Cir. 1988).

     *Kelly*'s construction of § 523(a)(7) was not dictum.  "It was no stray remark or aside.  It explains the Court's rationale and thus is part of the holding."  *United States v. Bloom*, 149 F.3d 649, 653 (7th Cir. 1998). There may well be dictum in the *Kelly* opinion, (*see, e.g., Kelly*, 479 U.S. at 50 (expressing "serious doubts whether Congress intended to make criminal penalties 'debts' within the meaning of § 101(4)" of the Bankruptcy Code), but the Court itself has distinguished that "dicta in *Kelly*" from *Kelly*'s analysis of "the purposes of restitution in construing the qualifying clauses of § 523(a)(7)" in concluding that "restitution orders fall within 11 U.S.C. § 523(a)(7)'s exception to discharge provision," *Davenport*, 495 U.S. at 559—which the Court deems necessary to its decision in that case:

> In reaching that conclusion, the Court necessarily found that such orders are 'not compensation for actual pecuniary loss.'  Rather, '[b]ecause criminal proceedings focus on the State's interests in rehabilitation and punishment,' the Court held that 'restitution orders imposed in such proceedings operate 'for the benefit of' the State" and not "'for compensation' of the victim." 479 U.S. at 53.

*Id.* at 558-559.  Moreover, as Judge Easterbrook explains,

> The Supreme Court often articulates positions through language that an unsympathetic audience might dismiss as dictum--consider the catalog of rules in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)--and it expects these formulations to be followed. . . .  The Court can hear only a small portion of all litigated disputes;  it uses considered dicta to influence others for which there is no room on the docket.  Appellate courts that dismiss these expressions and strike off on their own increase the disparity among tribunals (for other judges are likely to follow the Supreme Court's marching orders) and frustrate the evenhanded administration of justice by giving the litigants an outcome other than the one the Supreme Court would be likely to reach were the case heard there.

*Bloom*, 149 F.3d at 653 (citations omitted).

30

a retreat from the principles applied in *Kelly*," *Davenport*, 495 U.S. at 563, and today, *Kelly* remains the Law of the Land and the law in this District, still standing for the propositions that "'the penal and rehabilitative interests of the State . . . are sufficient to place restitution orders within the meaning of § 523(a)(7)," that "neither of the qualifying clauses of § 523(a)(7) allows the discharge of a criminal judgment that takes the form of restitution," and that "§ 523(a)(7) preserves from discharge any condition a state criminal court imposes as part of a criminal sentence," and in particular, court-ordered restitution. *Kelly*, 479 U.S. at 50, 52, 53.

## CONCLUSION

Some obligations are unforgivable.  Federal forgiveness is simply unavailable, nor is it appropriate in this instance, for a state-imposed penal sanction—in this case, restitution ordered as part of Mr. Troff's criminal sentence.  The federal bankruptcy court is not in a position to nullify a State court penal sanction (restitution) regardless of how the State court may label or seek to vindicate its own order.  In the opinion of this Court, forgiveness of an arson-based restitution obligation, the payment of which is part of the sentence imposed by a state court as a criminal sanction, is not what Congress had in mind when it enacted 11 U.S.C. § 523(a)(7).

*Kelly* is still the rule, and should be.

For the reasons explained above,

**IT IS ORDERED** that the bankruptcy court's Order Granting Debtor's Motion for

31

Partial Summary Judgment and Denying Defendants' Motion for Summary Judgment is

hereby REVERSED.  The Appellee's restitution obligation is non-dischargeable under 11

U.S.C. § 523(a)(7).

Dated this *15* day of August, 2005.

BY THE COURT:

Bruce S. Jenkins
United States Senior District Judge